```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                        AT CHARLESTON
```

APRIL L. DENNIS,

    Plaintiff,

v.                             CIVIL ACTION No. 2:04-0784

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA DISABILITY
MANAGEMENT SERVICES,

    Defendant.

## MEMORANDUM OPINION

Pending before the court is defendant's motion for summary judgment. The parties represented to the court that this case, involving only an issue of benefits under the Bank One Long Term Disability Plan, could be resolved on summary judgment. By Order entered October 21, 2004, the parties were directed to file their motions for summary judgment on or before March 1, 2005. On April 1, 2005, defendant filed a timely motion for summary judgment, the time for filing having been previously enlarged by the court   Plaintiff has neither filed a motion for summary judgment nor has she responded to the one filed by defendant. For reasons expressed more fully below, defendant's motion is GRANTED.

### Background

On or about September 19, 2002, plaintiff, April L. Dennis, was an employee of Bank One in Kanawha County, West Virginia. As an employee of Bank One, plaintiff was a participant

in a long-term disability plan ("the Plan") offered by her employer.  Bank One purchased the long-term disability plan from Prudential and Prudential served as claims administrator of the Plan.  The Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA").

Dennis was injured in an automobile accident on September 19, 2002.  The long-term disability plan at issue herein is a two-tier plan with the first tier covering the first 24 months a person receives benefits under the Plan while the second tier governs persons receiving benefits under the Plan for greater than 24 months.  Eligibility for each tier is different.  For initial payments under the plan, a person is deemed disabled and eligible for payments if "Prudential determines that: 1) you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and 2) you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury."  Tr. 553.  In order to continue to receive payments under the Plan after 24 months have passed, Prudential must determine "that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience." Obviously, the standard for demonstrating continued eligibility beyond 24 months is much more rigorous because a person must be deemed by Prudential as unable to perform the duties of <u>any</u>

gainful occupation, rather than just unable to perform the duties of their regular occupation as is required for the first 24 months.

Dennis received benefits under the Plan for 24 months but was deemed ineligible to receive benefits beyond that time. It is this denial of benefits that is the subject of the Complaint filed herein.

### Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The moving party has the burden of establishing that there is no genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has failed to prove an essential element of the nonmoving party's case for which the nonmoving party will bear the burden of proof at trial. Id. at 322. If the moving party meets this burden, according to the United States Supreme Court, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the moving party has met this burden, the burden shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for that party.

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by a preponderance of the evidence, that the plaintiff is entitled to a verdict . . . .

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 250-51.  The opposing party must demonstrate that a triable issue of fact exists and may not rest upon mere allegations or denials.  Id. at 252.

## Analysis

A.      Standard of Review

In Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989), the Supreme Court held that judicial review of a trustee's decision regarding eligibility for pension benefits is de novo "unless the plan at issue gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  If the administrator retains discretion, the decision is reviewed for an abuse of discretion.

See id.; see also Buzzard v. Holland, 367 F.3d 263, 268 (4th Cir. 2004).

The Fourth Circuit "does not require specific phrases to trigger a particular standard of review. Rather, we examine the terms of the plan to determine if it vests in its administrators discretion either to settle disputed eligibility questions or construe doubtful provisions of the Plan." Feder v. The Paul Revere Life Ins. Co., 228 F.3d 518, 522 (4th Cir. 2000). In Bernstein v. CapitalCare, Inc., 70 F.3d 783, 788 (4th Cir. 1995), the court found that the plan at issue created discretion in the administrator because it stated that the administrator could "adopt reasonable policies, procedures, rules and interpretations to promote the orderly and efficient administration" of the plan and that benefits would be paid "only if [the administrator] determines" that certain conditions are met.

In the case of the long-term disability plan at issue here, the Plan provides:

> You are disabled when Prudential determines that:
>
> *   you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
>
> *   you have a 20% or more loss in your indexed monthly earnings due to that sickness or injury.
>
> After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the

5

>     duties of any gainful occupation for which you
>     are reasonable fitted by education, training or
>     experience.

Tr. at 553 (emphasis added). The court concludes that the language cited above is sufficient to confer discretionary authority to Prudential in making benefit determinations. See e.g., Machovec v. Prudential Ins. Co., 2004 WL 1505523, *3 (D. Md. 2004) (plan confers discretion when it states that an employee is disabled "when Prudential determines that [he is unable to perform each and every of the material and substantial duties of [his] regular occupation"); see also Thompson v. Life Ins. Co. of N.A., 2002 WL 337055, *3 (4th Cir. 2002)(Plan provision stating that payment of benefits begins when the fiduciary receives "due proof" of eligibility confers discretion).

      Because the Plan confers upon Prudential discretion to determine eligibility for benefits, the court must determine whether the decision to terminate plaintiff's benefits under the Plan was an abuse of discretion. See Buzzard, 367 F.3d at 268. In so doing, the court's inquiry is to determine whether the decision was reasonable. Berenstein, 70 F.3d at 787. An administrator's decision is reasonable "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Id. at 788.

The Fourth Circuit has stated that where a fiduciary both administers and insures the plan, as Prudential does here, the standard of review should be adjusted to decrease deference to the administrator in proportion to the degree of the administrator's conflict of interest. <u>Bailey v. Blue Cross & Blue Shield of Virginia</u>, 67 F.3d 53, 56 (4th Cir. 1995). However, even under a reduced level of deference, the decision to terminate benefits in this case was not an abuse of discretion.

B.  <u>Was Prudential's decision to terminate benefits supported by substantial evidence?</u>

As noted above, after 24 months of payments, a person continues to be disabled under the Plan only when Prudential determines that, due to the same sickness or injury, a person is unable to perform the duties of any gainful occupation for which he or she is reasonably fitted by education, training, or experience.  In this case, Prudential determined that plaintiff was unable to perform the duties of her own occupation but found that she was not unable to perform the duties of <u>any</u> occupation. According to Prudential:

> As previously explained in our letter dated October 2, 2003, LTD benefits have been approved for 24 months as of March 20, 2004.  In order to evaluate [sic] for continued eligibility of benefits, additional information was requested from you and your treating physicians, Dr. Santrock and Dr. Derakhshan.
>
> The evaluation with Dr. Santrock, orthopedics, on December 16, 2003 reveals that you were in an MVA in September 2001 and were admitted overnight for

>observation due to a concussion, shoulder and neck pain.  The x-rays performed at that time were negative for fractures.  As you had continued complaints of pain, numbness and tingling in your upper extremity, an MRI was performed in February 2003 and was found to be normal.  You underwent carpal tunnel release of the left hand and reported that it was of no benefit as you continued to experience symptoms.
>
>Upon physical examination, you had unrestricted range of motion (ROM) of both your cervical and shoulder region but you exemplified hypersensitivity.  The provocative testing for lateral epicondylitis was normal and your grip strength was also noted to be normal.  Dr. Santrock opined there is no indication for further surgical intervention or any additional recommendations from an orthopedic standpoint.  A Work Status Form completed by Dr. Derakhshan, neurologist, on February 26, 2004 indicated that you are capable of performing a sedentary occupation.  There were no restrictions or limitations identified.
>
>A thorough review of the medical information may warrant restrictions and limitations of limited repetitive use of your upper extremities which may preclude you from performing your occupation.  However, these restrictions would not preclude you from performing another occupation for which you are reasonably fitted by your education, training or experience.  Therefore, we have determined that as of March 20, 2004, you will no longer meet the requirements of the policy and we have terminated your LTD claim effective March 21, 2004.

Tr. at 178-79.  Prudential determined that even with the restrictions imposed above, Dennis would still be able to perform in certain sedentary gainful occupations, such as a gate guard, security, cafeteria worker or greeter.  Tr. at 125.

Plaintiff appealed Prudential's decision, indicating that Dr. Kris Murphy had evaluated her on in October 2003, an MRI of her neck had been done, and Dr. Kerakhshan had incorrectly marked the box for sedentary occupation. Tr. at 269.

In denying plaintiff's appeal, Prudential stated

> Ms. Dennis notes she is unable to work due to a cervical condition, carpal tunnel syndrome and blackouts. She also reports foot problems due to cubital tunnel syndrome.

Medical information provided includes an evaluation from Dr. Murphy from October, 2003; an unsigned Work Status Form, reported to be from Dr. Derakhshan dated February 26, 2004, supporting disability due to carpal tunnel syndrome, blackouts, a cervical condition and a foot condition; and a cervical MRI from March 8, 2004 which revealed degenerative changes at C4-5 and C5-6, with a tiny central disc protrusion at C5-6 that is non-compressive.

> The medical information in file does not clearly document what would prevent sedentary work. Ms. Dennis reports blackouts, however, there has been no objective evidence to support this self-reported symptom or that it would prevent sedentary work duties. Furthermore, the self-reported symptom benefit limitation would apply to both this condition as well as her headaches.[1] It is also noted that Ms. Dennis has a foot condition, however, a sedentary occupation would

---

[1] The Plan also provides that "[d]isabilities due to a sickness or injury which, as determined by Prudential, are primarily based on self-reported symptoms have a limited pay period during your lifetime. . . . The limited pay period for self-reported symptoms and mental illness combined is 24 months during your lifetime." Tr. 561. The Plan defines "self-reported symptoms" as "the manifestations of your condition, which you tell your doctor, that are not verifiable using tests, procedures and clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headache, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy." Tr. 573.

9

>not be contraindicated, and her carpal tunnel syndrome would not be expected to prevent the performance of work tasks requiring the upper extremities on an occasional basis.
>
>We performed an internal vocational assessment to determine if Ms. Dennis was employable within her sedentary work restrictions. The following occupations were identified:
>
>- Credit Information Clerk, $6.99/hour;
>- Information Clerk, $7.60/hour;
>- Surveillance System Monitor, $7.21/hour;
>
>The job duties of these occupations was provided to Dr. Derakhshan for his comments. Dr. Derakhshan was requested to identify what duties Ms. Dennis would have difficulty performing, excluding her blackouts and headaches as a cause. He noted that a rehabilitation counselor should address Ms. Dennis' employability within these occupation[s]. He provided no restrictions and did not identify any of the jobs or job duties as being outside of Ms. Dennis' capabilities.
>
>We previously determined Ms. Dennis' blackouts and headaches would be subject to the 24 month policy limitation. We also noted Ms. Dennis was capable of performing sedentary work, which required occasional use of her upper extremities, and had the relevant education, training or experience to perform these occupations. Dr. Derakhshan has not provided any medical opinion to the contrary and there has been no medical evidence submitted with Ms. Dennis' appeal to support an inability to perform sedentary work. Therefore, we have determined Ms. Dennis is not eligible for benefits beyond the initial 24 month period and are upholding our decision to terminate her claim effective March 21, 2004.

Tr. 171-72. Plaintiff's second appeal was also denied. Tr. 165-67.

In denying plaintiff continued benefits after 24 months, Prudential relied upon the medical opinions of several doctors,

10

as well as objective medical evidence.  For example, Dr. Santrock, an orthopedic surgeon, evaluated plaintiff on December 16, 2003.  Dr. Santrock noted that an MRI performed in February 2003 was normal.  Dr. Santrock further stated that upon physical examination, plaintiff had an unrestricted range of motion of both her cervical and shoulder region but that she exemplified hypersensitivity.  His evaluation also noted that provocative testing for lateral epicondylitis was normal and that plaintiff's grip strength was also normal.  Dr. Santrock opined there was no need for further surgical intervention or additional recommendations from an orthopedic standpoint.  Furthermore, MRIs and x-rays taken of plaintiff did not indicate that she suffered from any condition that would render her incapable of performing sedentary work.  See, e.g., Tr. 60-61, 271, 332.

Finally, Dr. Derakhshan was asked on several occasions to identify how plaintiff's condition precluded her from performing sedentary work.  He failed to do this and, accordingly, there is no medical evidence in the record to indicate that plaintiff had a verifiable medical condition making it impossible for her to perform sedentary work.  Based on the foregoing and as explained specifically in Prudential's denial letters, the decision to terminate plaintiff's benefits was reasonable and based on substantial evidence.

## Conclusion

For the aforementioned reasons, the court finds that Prudential's decision was supported by substantial evidence and grants defendant's motion for summary judgment. Accordingly, a separate Judgment Order of even date herewith will be entered.

The Clerk is directed to mail copies of this Memorandum Opinion to all counsel of record.

It is SO ORDERED this 1st day of February, 2006.

ENTER:

David A. Faber
Chief Judge